GEORGE MANDA *et al.*, Plaintiffs-Appellees, *v.* MELVIN E. BRANHAM *et al.*, Defendants-Appellants.

Fifth District   No. 76-273

Opinion filed June 28, 1977.

J. Lewis Wingate, of Vienna, for appellants.

Jack H. Anderson and William A. Sunderman, both of Anderson Law Office, of Charleston, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendants are appealing from a judgment in the circuit court of Johnson County granting plaintiffs' motion for summary judgment.

Plaintiffs' complaint alleged that the defendants, Melvin E. Branham and Virginia B. Branham, had breached a contract for the sale of a 600-acre farm located in Johnson County, Illinois. Plaintiff Bill Walborn, a real estate broker employed by the defendants, alleged he was entitled to a commission for procuring an able buyer. Plaintiff George Manda, the purchaser, requested damages as a result of the defendants' alleged breach, and in the alternative, he asked that the contract be specifically performed.

The defendants' answer contained general denials of the matters alleged in the plaintiffs' complaint and contained two defenses to the complaint, challenging the validity of the contract. First, the defendants alleged that the plaintiff Walborn had been employed by the plaintiff Manda prior to and subsequent to his employment with them, and that this double employment created a double agency without the knowledge or consent of the defendants. By virtue of the alleged double agency, defendants maintained the plaintiffs' claim for a commission should be denied. Second, the defendants alleged that the real property description contained in plaintiffs' Exhibit "B" was insufficient, rendering it unenforceable under the provisions of the Statute of Frauds (Ill. Rev. Stat., ch. 59, par. 2).

The facts of this case are that the plaintiff Walborn first contacted the defendants in May of 1973 to inquire whether he could list their farm property for sale through his office. An oral agreement was entered into wherein the listing price was set at $120,000. Thereafter, during the first week of August 1973, the plaintiff Walborn brought a prospective purchaser, the plaintiff George Manda, to the Branham farm to view the property. Manda was accompanied by his son. The Mandas and Bill Walborn were shown the farm by Melvin Branham. No offer was made to purchase the farm at that meeting, but George Manda returned that evening with Bill Walborn for the purpose of entering into negotiations. Prior to the plaintiffs' arrival, the defendants had decided to lower their asking price to $100,000. By so doing, they had further decided to reserve to themselves a 40-acre tract of the farm. The negotiations which ensued that evening did not result in any agreement for the purchase or sale of the defendants' farm property. George Manda insisted on purchasing the whole 660-acre tract, whereas the defendants were determined to reserve a specific 40-acre tract.

Thereafter, the defendants were contacted by Bill Walborn, who persuaded them over the telephone to offer the entire 660-acre tract for sale at the price of $100,000. After securing the defendants' permission to offer the entire 660-acre tract at that amount, Walborn telephoned Manda to convey the proffered terms of sale. Manda accepted the terms of the offer, but he informed Walborn that he would be leaving town for approximately two weeks so that he could not execute the necessary documents. He authorized Walborn to tender a $1,000 earnest money check to the defendants on his behalf and to sign an "Offer and Acceptance Agreement" in his name.

Walborn contacted the defendants to inform them that the terms of sale had been accepted. The defendants were told during that conversation that Manda would be leaving the area for a vacation trip to last about two weeks. An appointment was set up for the following afternoon at Mrs. Branham's fabric store in Vienna, so that the necessary papers could be executed. At that meeting, the defendants signed a property listing agreement, formalizing the oral agreement they had entered into earlier with Walborn. They also signed an "Offer and Acceptance Agreement" and accepted a check for $1,000 tendered by Walborn on behalf of Manda. Walborn signed the "Offer and Acceptance Agreement" as Manda's agent.

After the documents were signed, the defendants and Bill Walborn went to the office of the defendants' attorney for the purpose of having a contract for deed prepared, but they were unable to make contact with him. They then went to the home of Richard Reichart, a bank officer at the First State Bank of Vienna. The bank held some overdue notes of the defendants, and the visit was an attempt by defendant Melvin Branham to insure Reichart that he would be in a position to take care of his delinquent notes. Branham indicated to Reichart that he had sold his farm, and he tendered the earnest money check in the amount of $1,000 to him as partial payment on the notes.

Approximately 10 days thereafter, Walborn contacted the Branhams to inquire whether the defendants' attorney had prepared the necessary papers for the transfer of the farm. Melvin Branham indicated then he no longer wanted to convey the farm under the terms agreed upon. He offered to return the earnest money of $1,000, but the plaintiffs refused, whereupon this action was filed in the circuit court of Johnson County.

The issue on appeal is whether the trial court was correct in granting the plaintiffs' motion for summary judgment. The plaintiffs' amended complaint alleged a breach of the contract for the sale of the farm. The defendants' answer, which was not verified, contained a general denial of the material allegations in the amended complaint, and raised two defenses as to the validity of the contract. The plaintiffs filed a reply to the

defenses raised in the defendants' answer denying the allegations contained therein. Thereafter, the plaintiffs each filed a separate motion for summary judgment supported by affidavits, discovery depositions taken from the defendants, and statements of anticipated testimony pursuant to Illinois Supreme Court Rule 191(b). The defendants did not respond to plaintiffs' motion with counteraffidavits, whereupon the circuit court granted summary judgment in favor of the plaintiffs.

■■ ■ A motion for summary judgment should be granted where there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 586.) While the defendants' answer purports to raise issues of material fact, a party opposing a motion for summary judgment cannot rely upon his complaint or answer alone to raise genuine issues of material fact. (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380.) In *Walsh v. Monumental Life Insurance Co.* (1964), 46 Ill. App. 2d 431, 435, the court stated:

> "It is true, as contended by defendants, that where facts in support of a motion for summary judgment are set forth in an affidavit presented by the movant, the opposing party cannot rely solely on his complaint to rebut it, even though the complaint and answer taken alone do present a genuine issue of material fact."

■■ If such issues raised in the complaint or answer are not further supported by evidentiary facts through affidavits or such, and the movant is entitled to judgment as a matter of law, summary judgment is then appropriate. (*Carruthers v. B.C. Christopher & Co.*, at 380; *Kapka v. Urbaszewski* (1964), 47 Ill. App. 2d 321, 326.) The effect of the defendants failure to file counteraffidavits was to admit the facts as presented in the plaintiffs' affidavits. *Fooden v. Board of Governors,* at 587; *Carruthers v. B.C. Christopher & Co.,* at 381.

The defendants' first defense to the complaint, challenging the validity of their contract with plaintiff Bill Walborn, alleged that a dual agency existed on the part of Walborn. Defendants alleged, *inter alia,* that Walborn had been employed by plaintiff George Manda prior and subsequent to his being employed by the defendants; that the said double agency involved conflicting duties, and further that Walborn concealed the fact of the double agency from the defendants.

Illinois case law provides that one may act as agent for both parties to a transaction if it be with their full knowledge and consent. (*Warner v. Young,* 308 Ill. 239, 241, 139 N.E. 393; *Adams v. Larson,* 279 Ill. 268, 116 N.E. 658.) In a more recent Illinois Appellate Court decision, *Corbett v. Devon Bank* (1973), 12 Ill. App. 3d 559, 570-71, that court stated:

> "It is true, as contended by defendants, that the law approves a dual agency relationship where all of the facts are disclosed and

where there are no conflicting or inconsistent interests which might possibly impel to a breach of loyalty. [Citation to *Adams v. Larson*]"

The evidentiary facts presented in the sworn affidavits filed by the plaintiffs in support of their motions for summary judgment are uncontradicted. The affidavit of R. C. Reichart, executive vice-president of the First State Bank of Vienna, clearly indicates that the defendants had prior knowledge of, and consented to whatever services Bill Walborn may have provided as agent for George Manda:

"6. That on August 14, 1973, MELVIN BRANHAM tendered to Affiant a certain check in the amount of $1,000 a copy of which is attached hereto and marked Exhibit "A." That further, MELVIN BRANHAM stated to Affiant that the farm had been sold and that Affiant was to take the check tendered as partial payment on his notes.

7. That on August 14, 1973, defendant MELVIN E. BRANHAM tendered to Affiant a document entitled 'Offer and Acceptance Agreement'.* * * Upon inquiry by Affiant as to the signature of the Buyer, the said MELVIN E. BRANHAM informed and advised Affiant that the said Bill Walborn had had to sign for the Buyer, as the Buyer had left the State on vacation."

The plaintiffs' own affidavits indicate the limited extent of Bill Walborn's duties as agent for George Manda. Walborn signed the "Offer and Acceptance Agreement" on Manda's behalf and tendered an earnest money check in the amount of $1,000 to the defendants, pursuant to Manda's request. The sale price had previously been set by the defendants at $100,000 for the entire 660-acre tract, as more clearly appears in the discovery deposition of defendant Virginia Branham:

"* * * Mr. Manda wanted to buy the entire farm and I refused to sell the 40 acres. I do not recall how much he offered the first time. I did not see Mr. Walborn again until the evening of August 14 at my fabric shop. My husband and I had discussed selling the farm and had finally decided to sell the whole thing. I believe the purchase price was $100,000."

■■ Considering the fact that the defendants had agreed among themselves as to the sale price for the property, and the fact that Walborn's duties as agent for Manda were very limited in nature and scope, it is clear that there were no conflicting interests which would impel a breach of loyalty by virtue of the dual agency. Coupled with the fact that Walborn fully disclosed the nature of his agency relationship with Manda, we find that there was no improper dual agency which would serve to invalidate the contract between the defendants and Bill Walborn.

Defendants' second defense to plaintiffs' complaint alleged that the description contained in the "Offer and Acceptance Agreement" was insufficient for the purposes of Statute of Frauds. The agreement, which was signed by both Melvin E. Branham and Virginia B. Branham, described the property as follows:

"660-acre Johnson County Ill farm located in Sec. 15, 16, 21, and 22."

■■ The agreement contained the terms and conditions of sale, and further referred to an existing mortgage on the property under a "Trade or Other Special Conditions" clause. The complete legal description contained in the mortgage referred to was before the circuit court in the affidavit of the county clerk and recorder of Johnson County. In *Thompson v. Wiegand* (1956), 9 Ill. 2d 63, 66, 136 N.E.2d 808, the Supreme Court of Illinois stated:

"To satisfy the Statute of Frauds, the writing itself must contain on its face or by reference to other writings, the names of the vendor and of the vendee, a description of the property sufficiently definite to identify the same as the subject matter of the contract, the price, the terms and conditions of sale, and the signature of the party to be charged."

In *Lewis Realty Co. v. Smith* (1972), 7 Ill. App. 3d 734, 735, 288 N.E.2d 515, this court held that the following description written on the back of a down payment check satisfied the Statute of Frauds:

" 'Down Payment on Parcel of Land at End of Minn. St. 165 X 245 Except Part So. East. of Small Water Course—Purchase Pr. 6000.00.' "

In the present case the defendants signed an agreement to convey the entire 660-acre tract which they owned in Johnson County. There could be no dispute as to what property was involved. On the basis of the description contained on the face of the "Offer and Acceptance Agreement," as well as the description contained in the mortgage referred to in the agreement, we find that the description was sufficiently definite to satisfy the Statute of Frauds.

Accordingly, there being no genuine issue as to any material facts, and the movants being entitled to judgment as a matter of law, we, therefore, affirm the judgment of the circuit court granting plaintiffs' motions for summary judgment.

Affirmed.

G. MORAN and KARNS, JJ., concur.